1   LANCE P. MAISS
    Nevada Bar No.: 4683
2   ARMSTRONG TEASDALE, LLP
    50 West Liberty Street, Suite 950
3   Reno, Nevada 89501
    Telephone No.: (775) 322-7400
4   Facsimile No.: (775) 322-9049
5   Email No.: lmaiss@armstrongteasdale.com
    *Attorneys for Plaintiffs*
6

7

8                    **UNITED STATES DISTRICT COURT**

9                         **DISTRICT OF NEVADA**

10

11  DOMINO'S PIZZA FRANCHISING          CASE NO. 3:10-CV-00560-HDM-WGC
    LLC, a Delaware limited liability
12  company; and DOMINO'S PIZZA         **RENEWED MOTION TO ENFORCE**
    MASTER ISSUER LLC, a Delaware       **JUDGMENT PURSUANT TO FRCP 70**
13  limited liability company,          **AND/OR FRCP 71 AND SANCTIONS**

14          Plaintiffs,

15  v.

16  CALVIN YEAGER, an individual;
    VALLEY PIZZA, INC., a Nevada
17  corporation; and LAKESIDE PIZZA,
    INC., a California corporation,
18
            Defendants.
19

20

21

22          COMES   NOW,   plaintiffs   DOMINO'S   PIZZA   FRANCHISING   LLC   and

23  DOMINO'S PIZZA MASTER ISSUER LLC (collectively, "Domino's"), by and through

24  their counsel, Armstrong Teasdale LLP, hereby renews its motion for an order to compel

25  
26  Mathew Matlock to transfer the telephone numbers (775) 265-2929 to Domino's, pursuant

27  to the Injunction Order and the Final Judgment issued by United States District Court for

28

                                        1

1   the Eastern District of Michigan ("Michigan District Court"), and registered with this

2   Court.

3

4         This renewed motion is based upon the Points and Authorities attached hereto, and

5   such further argument the Court may permit.

6

7         DATED this 14th day of December, 2011.

8

9                                                      ARMSTRONG TEASDALE, LLP

10

11

12                                          By:   /s/ Lance P. Maiss
                                                  LANCE P. MAISS
13                                                50 W. Liberty Street, Ste. 950
                                                  Reno, NV 89501
14                                                Telephone No.: (775) 322-7400
                                                  Attorneys for Plaintiffs
15

16

17

18

19

20

21

22

23

24

25

26

27

28

## POINTS AND AUTHORITIES

## INTRODUCTION

This matter involves a dispute between a franchisor and franchisee, in which Final Judgment has already been rendered in the United States District Court for the Eastern District of Michigan ("Michigan Federal Court") in favor of Domino's, the franchisers of the well-known pizza delivery business bearing the "DOMINO'S PIZZA" name and logo, which included, among other things, the transfer of telephone numbers used by the franchise locations back to Domino's.

**The Defaulting Franchisees**

Defendants Calvin Yeager, Valley Pizza, Inc. ("Valley") and Lakeside Pizza, Inc. ("Lakeside") had been the owner and operator of franchises of Domino's.  Yeager was President and sole owner of both Valley and Lakeside.  Valley and Domino's were parties to a Standard Franchise Agreement on or about October 17, 2007, by which Valley was authorized to operate the Domino's franchise identified as Store No. 7415, located at 1281 Kimmerling Road, Suite 18-A, Gardnerville, Nevada 89460.  ("Store 7415 Agreement").  A true and correct copy of the Store 7415 Agreement is attached as Exhibit 1.  In connection with the operation of Store No. 7415, Valley used the following telephone number: (775) 265-2929.  Lakeside and Domino's were also parties to a Standard Franchise Agreement  on or about January 26, 2007, by which Lakeside was authorized to operate the Domino's franchise identified as Store No. 7972, located at 987 Edgewood Circle, Unit A & B, South Lake Tahoe, California 95901.  ("Store 7972 Agreement").  A true and correct copy of the Store 7972 Agreement is attached as Exhibit 2. In connection

with the operation of Store No. 7972, Lakeside used the following telephone number: (530) 543-1235. As set forth in both the Store 7415 Agreement and the Store 7972 Agreement, Yeager personally guaranteed the performance of Valley and Lakeside.

After defaulting on the Store 7415 Agreement and the Store 7972 Agreement (collectively, the "Franchise Agreements"), on or about November 13, 2009, Domino's terminated both Franchise Agreements with defendants.

### Failure to Comply with Post-Franchise Obligations

Upon termination, the Franchise Agreements imposed a number of obligations on Valley, Lakeside, and Yeager. In particular, Section 18.3(c) of the Franchise Agreements required Valley, Lakeside, and Yeager to "notify the telephone company . . . in writing of the termination . . . of your right to use all telephone numbers . . . relating to the Store and to authorize in writing the transfer of these to [Domino's] or its franchisee or designee." Further, Valley, Lakeside, and Yeager agreed under Section 18.3(c) to "execute any written authorizations . . . in the form prescribed by [Domino's directing the telephone company . . . to transfer all telephone numbers . . . [Domino's], its franchisee, or designee upon the occurrence of" the termination of the Franchise Agreements. Additionally, in Section 18.3(c) of the Franchise Agreements, Valley, Lakeside, and Yeager acknowledged that Domino's has "the sole rights to and interest in all telephone numbers" used in connection with the Stores.

### Injunction Order and Final Judgment

Notwithstanding the termination of the Franchise Agreements, defendants failed to comply with post-term obligations contained therein. As a result, on December 2, 2009,

1  Domino's commenced an action against the defendants in the Michigan District Court to

2  obtain, among other things, injunctive relief requiring defendants to comply with the post-

3

4  termination obligations, including the return of the telephone numbers.  On January 25,

5  2010, Domino's obtained a preliminary injunction against defendants, requiring

6  defendants, as well as their agents, servants, and employees, and those persons and

7  entities in active concert or participation or privity with any of them, to comply with the

8

9  post-term obligations, including "to transfer the telephone numbers to Domino's . . ."

10  ("Injunction Order").  A true and correct copy of the Injunction Order is attached as

11  Exhibit 3.

12      Thereafter, Domino's obtained the Final Judgment against defendants, which made

13

14  the preliminary injunction from the Injunction Order a permanent injunction.  A true and

15  correct copy of the Final Judgment is attached as Exhibit 4.  On August 3, 2010, the Final

16  Judgment was registered with this Court.

17  **Defendants' Steps to Circumvent Enforcement of the Final Judgment**

18      Lakeside was dissolved on October 25, 2010, and Valley was dissolved on October

19

20  27, 2010, followed by a Chapter 7 petition for bankruptcy filed by Yeager on November

21  18, 2010 ("Chapter 7 Petition") in the United States Bankruptcy Court for the Eastern

22  District of California.  ("California Bankruptcy Court").  Significantly, the telephone

23

24  numbers were not listed in the Chapter 7 Petition.  As a result, Domino's focused on

25  enforcement of the Final Judgment against Mathew Matlock, the operator of the successor

26  business to the Domino's location in Gardnerville, Nevada under the name "Pronto

27  Pizza."

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### The California Bankruptcy Court Lifts Stay to Allow Domino's to Obtain Telephone Numbers

In response to Yeager filing his Chapter 13 Petition on August 9, 2011, Domino's filed a motion to lift the automatic stay to enforce the injunction against defendants to transfer the telephone numbers.  In granting the motion, the California Bankruptcy Court lifted the stay provisions to allow Domino's "to exercise and enforce all nonbankruptcy rights and remedies to obtain possession of the property commonly known as (775) 265-2929 and (530) 543-1235, including non bankruptcy proceeding to enforce [Domino's] rights."  ("California Bankruptcy Order").  A true and correct copy of the California Bankruptcy Order is attached hereto as Exhibit 5.  In Civil Minutes explaining his ruling, Judge Klein stated that "Domino's terminated [Yeager's] interest in the telephone numbers" before the Chapter 7 Petition was filed and "had only, at most, a bare possessory interest" in them.  A true and correct copy of the Civil Minutes are attached hereto as Exhibit 6.

### During Bankruptcy Proceedings in Nevada, Domino's Confirms Matlock's Relationship with Yeager and Transfer of the Telephone Number

Matlock also filed a petition for bankruptcy in this district on August 9, 2011[1].  According to the Transcript of Proceedings, dated September 23, 2011, for a 341 Meeting of Creditors, Matlock stated that he worked for Yeager in South Lake Tahoe as a manager of a Domino's franchise.  (Transcript of Proceedings, P 15, L 12-18).  Additionally, Matlock stated that he purchased the entire pizza business in Gardnerville, Nevada from

---

[1] Matlock's bankruptcy petition was filed the very same day as Yeager's petition – by the same counsel.

6

Yeager. (Transcript of Proceedings, P 12, L 9-14). Finally, Matlock stated that there was no written agreement to transfer the telephone number – he just assumed it from Yeager. (Transcript of Proceedings, P 13, L 13-24). A true and correct copy of the Transcript of Proceedings is attached as Exhibit 7. Although his Declaration before the Nevada Bankruptcy Court contradicted his previous statements, thus calling into question his credibility, the Declaration did confirm that Yeager had apparently sold and transferred the telephone number to Matlock, evidenced by a Bill of Sale, dated November 17, 2009 - - the day before Yeager filed his Chapter 7 Petition. Additionally, Matlock's Declaration set forth how the business assets were transferred first to Corey Reier, whom Matlock worked for, and then eventually to Matlock, further evidenced by attached bills of sale. A true and correct copy of the Declaration with attachments is attached hereto as Exhibit 8.

### The Nevada Bankruptcy Court Lifts the Stay

Domino's filed a motion to lift the automatic stay to enforce the injunction against Matlock to transfer the (775) 265-2929 telephone number to Domino's. The motion was granted ("Nevada Bankruptcy Order"). A true and correct copy of the Nevada Bankruptcy Order is attached hereto as Exhibit 9.

### Dominos' Again Requests Yeager and Matlock to Transfer Telephone Numbers

Although Domino's previous requests to transfer the telephone numbers were ignored, after the California Bankruptcy Order, on November 17, 2011, Domino's made another request to counsel for defendants and Matlock. A true and correct copy of the letter is attached as Exhibit 10. Unfortunately, Domino's received no response whatsoever.

**Domino's Continues to Suffer Prejudice**

To date, the telephone numbers have never been transferred back to Domino's. Instead, the telephone numbers continue to be used by competing pizza businesses located in Gardnerville, Nevada and South Lake Tahoe, California. Matlock's refusal to transfer the (775) 265-2929 telephone number back to Domino's has caused - and still is causing - significant prejudice because that telephone number was associated with the former Domino's franchise, and the inability to obtain the use of that telephone number is negatively impacting Domino's ability to refranchise the area where Valley operated a franchise.

## ARGUMENT

I.   ENFORCEMENT OF JUDGMENTS AND ORDERS UNDER RULES 70 AND 71

Fed.R.Civ.P. 70(a) provides that:

> if a judgment requires a party to convey land, to deliver a deed or other document, or to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done -- at the disobedient party's expense -- by another person appointed by the court. When done, the act has the same effect as if done by the party.

Fed.R.Civ.P. 70(b) provides that:

> If the real or personal property is within the district, the court -- instead of ordering a conveyance -- may enter a judgment divesting any party's title and vesting it in others. That judgment has the effect of a legally executed conveyance.

1

2   Rule 70 gives the district court a discrete and limited power to deal with parties who

3   thwart final judgments by refusing to comply with orders to perform specific acts.

4   *Analytical Engineering Inc. v. Baldwin Filters, Inc.* 425 F.3d 443, 449 (7th Cir. 2005).

5
    Fed.R.Civ.P. 71 provides that:
6

7                   When an order grants relief for a nonparty or
                    may be enforced against a nonparty, the
8                   procedures for enforcing the order is the same as
                    for a party.
9

10  Thus, when an injunction is addressed to a nonparty and he is given notice of the

11  injunction, Rule 71 permits a district court to use "the same processes for enforcing

12  obedience to the order is if [he where] a party,"  such as holding him in contempt for

13
    violating it. *Irwin v. Mascott*, 370 F.3d 924, 931 (9th Cir. 2004).   In summarizing the
14

15  application of these rules, along with Rule 65, the Court stated in *Judicial Watch, Inc. v.*

16  *U.S. Dep't of Commerce*, 34 F.Supp.2d 28, 43 (D.D.C. 1998)(footnote omitted):

17                  In certain circumstances, a judgment may be
18                  enforced against nonparties.   See 12 Charles
                    Alan Wright, Arthur R. Miller, *Federal Practice*
19                  *and Procedure* § 3033, at 177.  For example, as
                    stated in Federal Rule of Civil Procedure 65(d),
20                  and injunction is binding upon the parties and
                    "upon those persons in active concert or
21                  participation with them that receive actual notice
                    of the order . . ." A number of cases have
22                  affirmed the courts' authority to enforce their
23                  orders on nonparties, based in part upon Federal
                    Rule of Civil Procedure 71.  According to the
24                  court of Appeals for the Second Circuit, "it
                    seems clear that Rule 71 was intended to assure
25                  that process be made available to enforce court
26                  orders in favor of and against persons who are
                    properly affected by them, even if they are not
27                  parties to the action." *Lasky v. Quinlan*, 558
28

F.2d 1133, 1137 (2nd Cir. 1977)(citing 7 J. Moore, *Federal Practice* at 71.10 (1975)). This view was adopted by the Ninth Circuit in *Westlake North Property Owners Ass'n v. City of Thousand Oaks*, 915 F.2d 1301, 1304 (9th Cir. 1990), in which the court stated: "Rule 71 was designated to memorialize the commonsense rule that courts can enforce their orders against both parties and non-parties." *Id.* In particular, the courts are willing to enforce orders against nonparties when their nonparty status is used as a shield to frustrate the courts' orders. See, *Wilson Motor Co. v. Dunn*, 129 Okla. 211, 264 P. 194, 197 (1928)("such an absurd contention could only prevail where might was right and where utter contempt was in vogue of all law, courts, and orderly procedure").

In that case, the Court held that its "orders compelling production of illegally withheld documents may be enforced not only against [Department of Commerce] but also against any nonparties to which the [Department of Commerce] transferred possession of responsive documents in an attempt to circumvent the FOIA and the orders of this Court." *Judicial Watch* at 44.

II.   HAVING FAILED TO COMPLY WITH THE INJUNCTION ORDER AND FINAL JUDGMENT, THIS COURT MUST ISSUE AN ORDER FOR MATHEW MATLOCK TO TRANSFER THE (775) 265-2929 TELEPHONE NUMBER TO DOMINO'S, OR ALTERNATIVELY, ORDER THAT DOMINO'S POSSESSES ALL RIGHT, TITLE AND INTEREST TO THE TELEPHONE NUMBER

     A.   Matlock Has Known All Along That the Telephone Number Was To Be Returned To Domino's

In the case at bar, the Injunction Order and Final Judgment were properly issued by the Michigan District Court. The Final Judgment was properly registered with this Court. The Injunction Order and/or the Final Judgment have been served upon

Matlock and his counsel on several different occasions[2]. Thus, there can be no doubt that Matlock has known all along about the obligation to return the telephone number to Domino's.

Moreover, Matlock has been provided the necessary due process to proceed against him in this Court. Rule 71 provides that the procedure for enforcing an order against a nonparty is the same for the party. Rule 65 essentially says the same thing. That procedure is governed by FRCP 5(b), which allows for pleadings filed after the original complaint and other motions to be served upon the counsel of record for each party or upon the party directly when not represented by counsel and is considered complete upon mailing. *City Cab Co. of Colorado, Inc. v. All City Yellow Cab, Inc.*, 581 F.Supp.2d 1197, 1200 (M.D.Fla. 2008).

    B.    <u>Because Of His Relationship To Defendants, Matlock Is Subject To The Injunction Order And Final Judgment</u>

The Injunction Order – made permanent by the Final Judgment – applied to the agents, servants and employees, and those persons and entities in active concert or participation or privity with the defendants – as properly authorized under Rule 65. (See, Exhibit 3). From the additional information obtained over the past few months, the close relationship suspected between Matlock and defendants, particularly Yeager, was confirmed. Matlock was first a manager for Yeager at the Domino's location in South Lake Tahoe, California and then became the manager at, and eventual owner of, the Pronto Pizza business at the Domino's location in Gardnerville, Nevada. (See, Exhibit 7).

---

[2] Although issues had been raised previously regarding service of the Injunction Order and Final Judgment, to remove any doubt, on December 8, 2011, Domino's served Matlock and the defendants with the Injunction Order and Final Judgment. (Exhibit 11).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

C.   Matlock Was Not A Bona Fide Purchaser

A "bona fide purchaser" has been defined as "one who pays valuable consideration, has no notice of outstanding rights of others, and acts in good faith. *Black's Law Dictionary*, Fifth Edition (1979).   Matlock has asserted that he purchased the telephone number without any notice of Domino's rights, paying consideration for it. However, notice may be inferred, particularly in circumstances when the purchaser and seller are intimately associated in business.   *Berge v. Fredericks*, 95 Nev. 183, 188, 591 P.2d 246, 249 (1979).   As referenced above, Matlock was a manager for Yeager at the South Lake Tahoe Domino's location and later acted as manager at the Pronto Pizza business at the Domino's location in Gardnerville, Nevada, a business he would eventually come to own. (See, Exhibit 7).   Thus, notice may indeed be inferred.   Moreover, Matlock could not have been acting in good faith, instead colluding with Yeager to avoid the obligations owed to Domino's – transfer of the telephone numbers.   As stated in *Berge*, "in order to be able to wrap around himself the cloak of a bona fide purchaser the buyer must be acting in good faith.   He must not be in collusion with the seller.   Such a proposition is axiomatic."   That's exactly what went on here.   Therefore, Matlock could not have been a bona fide purchaser.

D.   Since Yeager Never Owned The Telephone Numbers, He Could Not Transfer
     The (775) 265-2929 Telephone Number To Matlock

Even if Matlock was a bona fide purchaser, Yeager could not have transferred the (775) 265-2929 telephone number to him anyway.   Not only were the telephone numbers not the property of Yeager on the date of the Chapter 7 Petition, Yeager never had any ownership interest in the telephone numbers.   It is well established that a party

1   wrongfully in possession of property of another does not have any right, title or interest in

2   such property.   Under Section 18.3 of the Franchise Agreements, Yeager clearly agreed

3
    that the telephone numbers were the property of Domino's and not his property, and
4
5   Yeager agreed to transfer the telephone numbers back to Domino's upon termination of

6   the Franchise Agreements, which occurred on November 13, 2009.  (See, Exhibits 1 and

7   2).  Yeager had no rights or interest in the telephone numbers.  It is well established that a

8
9   party wrongfully in possession of property of another cannot convey good title to such

10  property to a third party.  See, *Alamo Rent-A-Car, Inc. v. Mendenhall*, 113 Nev. 445, 937

11  P.2d 69 (1997); *Welch v. Cayton*, 395 S.E.2d 496, 501 (W.Va. 1990)("the old rule that a

12
    thief cannot give title remains*"); Bergeron v. Aero Sales, Inc.*, 205 Ore.App. 257, 261-66
13
14  (transferor of property belonging to another could not convey title to such property), cert.

15  denied, 341 Ore. 548 (2006); *Inmi-Etti v. Aluisi*, 63 Md.App. 293, 300-305 (1985)(holding

16  that transferee of converted goods does not obtain title to such goods); *Schrier v. Home*

17
    *Indemnity Co.*, 273 A.2d 248, 250 (D.C.App. 1971)("a possessor of stolen goods, no
18
19  matter how innocently acquired, can never convey good title"); 18 Am. Jr.2d Conversion

20  (2004) §5, p. 158 (title of the owner of the property remains unaffected by act of

21  conversion).

22          The California Bankruptcy Court has already agreed[3], holding that Yeager's

23  interest in the telephone numbers had been terminated.  (See, Exhibit 6).  Thus, Yeager
24
25  never conveyed any right, title or interest in the (775) 265-2929 telephone number to

26  Matlock.  In turn, Matlock has no ownership interest to the telephone number.  Therefore,

27

28  [3] Presumably, the Nevada Bankruptcy Court did as well in lifting the stay in Matlock's bankruptcy.

1    the (775) 265-2929 telephone must properly be returned to Domino's.

2        E.    Matlock And Counsel Should Be Sanctioned

3
4            To date, there has been no compliance whatsoever.   To the contrary,
5    defendants and Matlock, by and through their counsel[4], have purposely avoided
6    compliance with the Injunction Order and Final Judgment by transferring the telephone
7    numbers to affiliated parties (Matlock) prior to seeking bankruptcy protection and seeking
8
9    to delay enforcement before this Court in the process.   As a result, not only has Domino's
10   been denied its rights under its Franchise Agreements, the Injunction Order, and Final
11   Judgment, it has incurred significant attorney's fees and expenses.   Therefore, Domino's
12   requests this Court to award sanctions against Matlock and counsel.
13
                                **CONCLUSION**
14
15           Domino's has been trying to enforce its rights as the Franchisor for several years
16   now.   Even with an Injunction Order and a Final Judgment to enforce transfer of the
17   telephone numbers, Domino's has still been denied its rights under the law.   Mathew
18
19   Matlock has possession of the (775) 265-2929 telephone number.   However, he did not
20   properly acquire the telephone number.   In fact, he does not have true ownership to it;
21   Domino's does – by contract and by law.   Moreover, through his relationship with
22   defendants, Matlock has been subject to the Injunction Order and Final Judgment all
23   along, requiring a return of the telephone number to Domino's.
24
25           Therefore, Mathew Matlock must be ordered to turn over the (775) 265-2929
26   telephone number to Domino's, pursuant to Rules 70 and 71.   Alternatively, Domino's
27
28   [4] Counsel apparently represented the parties in the transfers of the telephone numbers, creation of successor pizza business entities, represented all defendants and related parties in these proceedings, and filed the simultaneous bankruptcy petitions for Yeager and Matlock.

1    requests that this Court simply issue an order that Domino's is the rightful owner of the

2    telephone number, pursuant to Rule 70(b).

3
     Finally, Domino's hereby requests sanctions against Mathew Matlock as well as his
4
5    counsel for their conduct during this litigation.

6

7

8
     DATED this 14th day of December, 2011.
9

10

11                                              ARMSTRONG TEASDALE, LLP

12

13
                                                By: ___/s/ Lance P. Maiss_____
14                                                    LANCE P. MAISS
                                                     50 W. Liberty Street, Ste. 950
15                                                   Reno, NV 89501
                                                     Telephone No.: (775) 322-7400
16                                                   Attorneys for Plaintiffs

17

18

19

20

21

22

23

24

25

26

27

28